IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

BOBBIE MARIE GAGE                                                                    PLAINTIFF

v.                                    Civil No. 12-3095

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                       DEFENDANT

MEMORANDUM OPINION

Plaintiff, Bobbie Marie Gage, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental security income under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.     **Procedural Background**

Plaintiff applied for DIB and SSI on April 9, 2009. (Tr. 24.) Plaintiff alleged an onset date of December 31, 2006 due to manic depression, seizures, migraines, anxiety, panic, and back problems. (Tr. 137.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on June 23, 2010 in front of Administrative Law Judge ("ALJ") Edward Starr. Plaintiff was present to testify and was represented by counsel. (Tr. 39.) The ALJ also heard testimony from Plaintiff's husband, Brian DeWitt Gage. (Tr. 65.) A Vocational Expert ("VE") was not present. (Tr. 39.)

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, Plaintiff was 35 years old, and possessed a high school education. The Plaintiff had past relevant work experience ("PRW") of USDA Inspector, Home Health Worker, Cleanup Crew Member, Cable Builder for Postal Department, and Cashier. (Tr. 30.) .

On September 30, 2010, the ALJ concluded that Plaintiff suffered from the following severe impairments: migraines, seizure disorder, mood disorder, and anxiety disorder. (Tr. 26.) The ALJ found that Plaintiff maintained the residual functional capacity to "occasionally lift/carry ten pounds, frequently lift/carry less than ten pounds, sit for six hours during an eight-hour workday, and occasionally climb, balance, crawl, kneel, stoop, and crouch. She must avoid hazards, including moving machinery and unprotected heights. She can do work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables and little judgment required. Supervision required is simple, direct, and concrete. (Tr. 28.) With the assistance of VE Jim Spragins by interrogatory, the ALJ determined that the Plaintiff could perform such representative occupations as: Small Product Assembler, Small Production Machine Operator, and Small Product Inspector. (Tr. 31.)

Plaintiff requested a review by the Appeals Council on November 8, 2010. (Tr. 20.) The Appeals Council declined review on May 23, 2012. (Tr. 1.) Plaintiff filed this appeal on July 24, 2012. (ECF. No. 1.) Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 15, 16.)

**II.    Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record

AO72A
(Rev. 8/82)

to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 404.1520, 416.920 (2003).

### III. Discussion

Plaintiff raises three issues on appeal:1) The ALJ erred when he accepted VE recommendations for jobs that require the Plaintiff to use or be near moving machinery when he had assigned an RFC which


indicated she could not be near such machinery due to her seizure disorder; 2) the ALJ erred in his *Polaski* credibility analysis when he failed to discuss medication side effects; 3) the ALJ committed various other errors such as relying solely on objective medical evidence to discredit subjective allegations, failing to order another Psychiatric Review after Plaintiff submitted her Activities of Daily Living Report at the Reconsideration level, and failing to consider the layperson testimony of Plaintiff's husband. (Pl.'s Br. 7-9.) Because this Court finds that the lack of a Mental RFC requires a remand, it is not necessary to reach the issues raised by Plaintiff at this time.

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace.""An administrative law judge may not draw upon his own inferences from medical reports."*Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart*, 361 F. 3d 1066, 1070 (8th Cir. 2004.)

In this case, the Plaintiff alleged a variety of mental issues, including manic depression, anxiety, and panic [attacks] in her application. (Tr. 137.) She testified that she has been treated for anxiety, and that she has panic attacks. (Tr. 59.) She described her panic attacks, sleeplessness, and racing mind. (Tr. 60-61.) Her husband provided testimony regarding her panic attacks. (Tr. 67.) She provided records of medical treatment, including inpatient treatment at Vista Health from June 27, 2008 to July 19, 2008, and treatment at Ozark Guidance starting in 1998. (Tr. 864-965, 966-1091.)

Her principle diagnosis at Vista was anxiety disorder, NOS. (Tr. 864.) Her secondary diagnosis included opioid type dependence; drug withdrawal syndrome; sedative/hypnotic/anxiolytic dependence; personality disorder, NOS; backache, unspecified; wrist drop; migraine headache, unspecified; and seizure disorder, unspecified. (Tr. 864-65.)

AO72A
(Rev. 8/82)

She received a number of Axis I diagnoses from Ozark Guidance, including dysthymic disorder; depressive disorder, NOS; anxiety disorder, NOS; depression disorder, NOS; mood disorder, NOS; panic attacks with some agoraphobia. (Tr. 968, 969, 971, 987, 996.)

She was seen by Dr. Charles Nichols, Psy.D. for a consultative psychiatric examination on July 15, 2009. (Tr. 526.) He stated that she "does appear to have genuine psychological problems, including symptoms of depression and panic episodes."(Tr. 529.) However, he also noted that she "seemed to exaggerate and overendorse problems." (Tr. 529.) He also noted that her score on the Structured Inventory of Malingered Symptomology ("SIMS") "markedly exceeds the cutoff and is consistent with a patient who is exaggerating her psychological problems." (Tr. 529.) He assigned a provisional diagnosis of malingering, and deferred any other diagnosis due to validity concerns. (Tr. 529-30.)

The Psychiatric Review Technique ("PRT") completed on July 21, 2009 by Kay Cogbill,[2] noted Dr. Nichols' malingering diagnosis and found no medically determinable impairments, in part because the activities of daily living and third party activities of daily living were not returned after two attempts. (Tr. 523, 544.)

Perhaps because of this PRT, it does not appear that a Mental RFC assessment was ever completed. However, there is more than adequate medical documentation of at least some degree of psychological impairment to require a Mental RFC. *See* SSR 85-16, *Titles II and XVI: Residual Functional Capacity for Mental Impairments*. Further, Plaintiff and her husband both provided testimony concerning psychiatric issues. It does appear that the ALJ gave the Plaintiff the benefit of the doubt by listing mood and anxiety disorder as severe impairments at Step 2 of his analysis. However, it appears that both this decision and his mental RFC assessment were based on his own inferences from the medical records and testimony rather than on the functional assessment of a medical professional. This requires a remand.

---

[2] No degree or other credentials noted on form.

5

On remand, the ALJ is directed to order another psychiatric consultative examination. This examination should include appropriate testing to determine the existence and extent of Plaintiff's exaggeration, and if that exaggeration may, in fact, be a symptom of mental illness. It should also include the appropriate testing and diagnostic tools needed to identify Plaintiff's psychiatric issues, or the lack thereof. The examiner may not defer diagnosis. Instead, the examiner must, to the best of their ability, assess a diagnosis. This examiner is also to complete a Mental RFC assessment.

Once the ALJ has this updated information, he is directed to reassess Plaintiff's Overall RFC and present this information to a VE, in person or by interrogatory.

### IV. Conclusion

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 9th day of July 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)